for argument is United States v. Godinez. May it please the Court, Nancy Spiegel for Plaintiff Appellant, United States of America. Your Honors, in this case, the government's position is that the District Court erred in granting the three-level downward departure because the defendant's case did not fall outside the heartland of defendants who are you think we should, how in this statute we are supposed to do a heartland analysis? Well I think the heartland in this kind of a statute is large and can involve many different types of factors and of course the District Court is permitted and should rely on its own experience. But in this case, the District Court focused on certain factors it found that didn't store long-term or organize or print the child pornography images is in our view balanced by the fact that this defendant was working on a school computer and he admitted that he was afraid of being caught and this is not the kind of situation where he really was in a position that he could save or print. And in addition, his conduct if you look at the beginning of the factual... He may be stupid, but isn't the heartland really, isn't this to get at people who are doing something permanent? No I don't believe that's true at all. The reason that child pornography is outside the ambit of the First Amendment in the first place is that each and every image is evidence of child abuse. So it is a crime that's different from most other crimes. And if you look at this particular defendant's conduct, this is somebody who unlike the defendant in Parrish, the case that the defendant relies on was just browsing and looking at images. This is somebody who by his own admission set up an account specifically to look at these images. He subscribed to at least 20 different email groups dedicated solely to trading child pornography. He solicited these images into his email. I want to make sure I understand, and I'm not sure I do, so let me explain what I think it's talking about. He received emails with attachments of the photographs. He looked at the photographs. He then closes the photograph and deletes the email. The computer retains as a temporary file the image. He did not do something to try to save the images, but he did voluntarily subscribe to them, so they came to him at his volition. Is that correct? Well, yes and no. Again, unlike let's say going to a website and just viewing the images, as in Parrish where in that case every webpage that is viewed is saved in the temporary internet cache, here as an attachment to an email on America Online, the defendant had to take a few more affirmative steps. In other words, he had to open the image as the attachment and press a button that says download, and then save it to some part of his computer and look at it again. He did save it. He didn't simply look at it with the email? I have to confess I'm not all that computer literate. Unfortunately, the record is really vague on exactly what he did, but I think the important distinction here is the intent of the viewer, and here this is somebody who by his own admission was engaging in this activity for over a year. The reason I ask is that the offense is by possession? Yes. If you go to a magazine stand and look at something, you can look at things without possessing it, and if you're flipping through a magazine and putting it back, you haven't committed the offense of possession. Our other case with Parrish talked about somebody who has a computer save something because that's how computers work, and I'm trying to figure out if this is more like the guy that did something to save it so he could go back and look at it again, or somebody who looked at something because his curiosity runs in the wrong direction, and I understand he did take affirmative steps to subscribe to the email list, so that's something to consider. There is a difference between somebody who has a computer save something because that's how computers work until you clear out the internet cache, and somebody who's making a point of saying, okay, I want to keep this so I can go back and look at it again. As I understood the description, at least he didn't have a filing system or some organized collection, and that's why I'm trying to figure out, did he do something to keep it to make it easy for himself to go back and check out it again, or is this looking and then letting go? Well, he had to take at least one step further than the defendant in Parrish because he, by his own admission again, would go back later, look at the image, and then delete it. Let me ask you this. If he had just looked at it and let it go, would he have possessed it? Well, yes, of course, because it is on his computer. Didn't he take affirmative steps to be on an email distribution list to receive child pornography? That's right, at least 20. So if he does that, he's feeding the demand for this, for child pornography. It's not a victimless crime. Whether he looks at it once and tosses it, or whether he saves it to look at every day, it seems to me, just from my perspective, that he's done something that violates the statute. Well, that's correct, because each viewing of one of these, these are sexually graphic images. In this case, they're mostly of girls under the age of 12, and each viewing is an exploitation of that child. He has to possess it at the time he looks at it. That's right. And maybe he doesn't possess it after that, when he deletes it, except in a technical way. But he knowingly possesses it at the time he looks at it. Well, but we're talking about not whether he violated it. Your position is not, the question is not whether he violated the statute, but whether it's the heartland. That's right. Well, what isn't the heartland, then, in this? What isn't the heartland? Well, for example, the defendant in Parrish, who the only factual evidence that was had was that he had looked at pages of, web pages of pornography, some of which had child pornography. This is a defendant, you have to look at the overall conduct. There's much more in the way of aggravating factors, there's much more evidence that this is the kind of person that fits squarely within the heartland. This is someone who has an obsession and addiction by his own admission he needed help. He was constantly, continuously looking at this material. He admitted to the FBI when they rang the doorbell that he had just downloaded three child pornography images that very morning. So if you're looking at a heartland of people and you want to distinguish between perhaps a Parrish who maybe is curious once or twice and looks at these pictures, this defendant in here is not Mr. Parrish. He is, you know, much more like the defendants in Stevens and Thompson in that sense. The amount of time he spent, the length of time in which he was engaged in the activity. Let me ask you a procedural question. As I understand it, the district judge departed downward on three grounds. Two of them it seems to me are totally wrong as a matter of law. That is one, that he didn't do some other offense. He didn't molest kids or distribute, which I think, you know, it's a different offense. So that can't be a ground to depart. Another was that the number was relatively small, but the number seems to have been within the guideline at some levels. So in my mind, the only question is whether he could have departed downward on the fact or that this guy didn't store and save this. So he may have possessed it, but maybe it's different. The concerns that some of my colleagues are expressing here, maybe it is a little different than some cases. But if we were to conclude that the judge could depart downward to some degree on the he didn't keep anything or he didn't intentionally keep it, but couldn't depart downward on the other two grounds, then what's the right procedure here? Well, we would contend that the case would still need to be remanded because we don't know how much of that three-level departure was based on the impermissible factors. So the case would still need to be remanded for the district court to reconsider in light of just this one factor, if the court felt that that was a permissible ground. And then the government's position is even as to that one factor, it's not outside the heartland. That's correct. If the judge had just departed on that one factor alone, that, you know, he looked at the stuff and then he pressed the delete button, then you would say it's impermissible because it's not outside the heartland. That's correct, Your Honor. That's exactly right. I'd like to reserve the remaining portion of my time for rebuttal. Thank you. Good morning. May it please the Court, I represent Fernando Godinez. Mr. Godinez is not present today. He's in federal custody. I ask your... I'd like to ask you to actually start with Judge Gould's last question. Suppose we do have a split verdict, decide that some but not all of the grounds cited were inappropriate, what should we do? Well, Justice Schroeder can probably help us because in Zach Sierra, they addressed the issue just recently of what's the standard de novo, initially an abuse of discretion if you find the departure was reasonable. And then I believe you people, three justices here, could decide yourselves whether or not the departure is warranted for several reasons. A, Judge Fees made a finding that this was an incredibly credible witness who took the stand. He actually works for the Federal Probation Department. Part of the time, does a... runs a sex offenders program. I think that you justices have the power to find the discretion to do a downward departure was appropriate. And I'd like to address Justice Gould. Even if he gave reasons for departure that are totally off the wall and totally wrong. Well, you're saying we could affirm that without remanding? That just seems bizarre. You could affirm it. We could say he could depart to some degree on one factor, but then I don't see how we could then rule that the departure he made giving other grounds was sustainable. So maybe I'm missing something. So take your time. Okay. You could affirm the departure on one of the three grounds and find that the ground was valid and that based upon the fatality of the circumstances, the departure of three levels is warranted quite easily. I mean, you... Because it's a NOVA review? Correct. Absolutely. And just to make the record clear, how this worked is my client received an email saying there's an order for him to view the pornography. He would have to download it to view it. And actually, I wanted to argue this. He actually never possessed it on the day he pled to. What he possessed in the day that he pled to was a billion fragments that the government reconfigurated into the pornography. That's a distinction that I think is relevant because you can't be convicted of possessing a drug four years ago when all you have are the remnants of it now. This is an unusual crime and I agree with the government. It is a unique crime that even though my client did not possess it on the day he was charged with the crime, he did, by evidence shown, possess it on a previous day. And I don't think Judge Fease departed on the lack of other criminal conduct. What he said, and this goes to where the heartland is. The heartland, what's normal? That's really what we're talking about. What's normal? How can you say that someone who, let's say, gets child pornography, but then doesn't molest the child, is outside the heartland? I'll explain it to you. Because the normal child pornographer purveyor of that takes affirmative steps to do other things. That's what's normal. That's in the record. The government had an opportunity to put on their own experts to say... The normal possessor of child pornography goes out and molests children? Takes affirmative acts. That's the testimony. For instance, in Parrish, he tried to contact a 15-year-old. I want to make a distinction. Parrish had 9,000 graphic pornographic pictures. My client had a hundred... We get a lot of these cases, so it's not like this is the first one that we're seeing. And you're right that a lot of these cases, people have 10,000 images. Okay. Well, if you look at... In that sense, 150 is something less. Right. And I have... I put that outside, but the numbers in the guidelines... We're talking, what's the heartland? And you're talking, what's normal? That's what all the cases talk about. What is a normal case? A normal case is a man generally, who possesses thousands of images, who either emails young ladies, tries to meet young ladies or young boys. That's the normal case. That's the heartland of this charge. Judge Feist blindsided me during this hearing when he started talking about another case that the prosecutor knew about, the Dick case, D-I-C-K, and he really hit home because when you look at the Zack Sierra case and this disparity within a case, what Judge Feist was trying to prevent was a disparity from a case to case. And that's what the guidelines are supposed to do. Someone who commits a crime that is five or 10 times worse than what my client committed shouldn't be getting the same sentence. Judge Feist took his seven years on the bench, his experience with these type of cases, the testimony of Dr. Marum that is unrefuted. The government had an opportunity to put on their own experts. They chose not to. And he found that this case, totality-wise, was outside the heartland. And I have to tell you, I know you see a lot of these, and unfortunately I've seen a lot of them too, the number of images I think is a permissible factor when you're looking at the heartland. And I also think when the government argues every time it's sentencing, my client did this, he tried to get a hold of the kids, he did this, he sent letters, he went to places. Now they're saying that's not relevant conduct. It is relevant. Yeah, I suppose it's true that if you have pornography of adults engaging in sexual acts, that most people who have that kind of pornography do engage in sexual acts. I mean... No, if I'm talking child pornography, yes. I know that, but I mean I'm just trying to extrapolate to something we're a little more familiar with. You don't possess the pornography in order to get some reaction to it. Most of the time you have to engage in those acts yourself as well. Therefore it would follow, I guess, but that's a... Right, and what I'm saying is relevant conduct of what's in a normal case, Judge Spieth said this is not a normal case because we're lacking what Dr. Marm said we always see. So when Justice Gould said he was down with departures, we're off the wall and all due respect, I think that it's logical that if you see all these cases, in every case the defendant does, not only possesses it, but does a whole bunch of other things and the government argues that's relevant at time of sentencing, the absence of that relevant conduct is something that the court can logically consider. But I thought we had a Ninth Circuit precedent that said that you can't consider that somebody didn't do some other crime because you're looking at what's the heartland for this crime. To say that it's not in the heartland because there's not an additional offense... I'm not saying an additional offense. I'm saying that the defendant's conduct is different than the conduct that the normal person does. They just don't possess it. Even though he's charged with possession, the government always tells the court, he just didn't possess it. He made phone calls. He sent emails. And I think this is a distinguishing factor when you have to isolate the charge and say, we don't care whatever else he did. Didn't the judge here also say like he didn't molest anybody? Yes, but he also said he did not... Stop right there. Okay. The judge said he didn't molest anybody. Correct. That's a separate offense. Right. But he said he did not rely on that. It's in the record. He says specifically he did not rely on that factor. Okay. I mean, I'm just saying... Take the record further. But... I just would like... The only thing I want to say is that if the Supreme Court rules that Blakely does have an effect that the guidelines are unconstitutional, I would argue that Judge Feeson's conduct here was legal, appropriate, and that the sentence under abusive discretion standard would be an appropriate sentence based upon my client's conduct. Is there a Blakely problem here? Is this a case we should hold off on until we hear from the Supreme Court? Well, if the government takes the position that Judge Feeson's conduct was unlawful because of the guidelines, and if the Supreme Court rules the guidelines are unconstitutional per se, then it'll be up to the court to have discretion as to what's the appropriate sentence. So I don't know the answer to that question. That seems that's a question every court in the country right now. Wait, where is the status of your client? He's in custody. He was awaiting last week, still to be placed in the sex offenders program in North Carolina. He's been in custody for since... Serving a sentence. Serving a sentence. And an 18-month sentence. That's correct. And so how long has he been in custody? I think about six months now. Thank you. First, I'd like to take issue with the idea that all these child pornography defendants who code with the system are engaging in other conduct, even just trying to contact minors. That's just simply not true. When that does occur, the government does... What's the record here? Well, in terms of Dr. Heartland, defendant, in his view, engages in other conduct. But don't forget, Dr. Merrim deals with all different kinds of sex offenders, not just child pornography possessors. And many of the tests that he administered, he admitted dealt with what they call contact offenses. So I think the district court's reliance on that testimony was a bit misplaced. Also, I take issue with the fact that one of the grounds was the fact that the government's excerpt of record, page 168, the court says, unlike a number of other cases, there has been no collateral behavior like contacting minors through the internet or any indication of any sort regarding acts or attempt at molestation or any other type of acting out behavior. That is, I think, particularly noteworthy given his profession, which is as a teacher. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is Taylor v. Illinois, TOR. Thank you.
judges: Schroeder, Gould, Clifton